**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

JEFFREY HANFORD, *Individually and on*                )
*Behalf of All Others Similarly Situated*,               )
                                                                              )
                             Plaintiff,                         )          Case No. 4:17-cv-02005
            vs.                                                        )
                                                                              )
FRANKLIN COLLECTION SERVICE,             )          **JURY TRIAL DEMANDED**
INC.,                                                                 )
                                                                              )
                                                                              )
                             Defendant.                      )

       Plaintiff Jeffrey Hanford ("Plaintiff"), through counsel, brings this action against

Defendant Franklin Collection Services, Inc. to secure redress against Defendants for unlawful

collection practices that violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et

seq. ("FDCPA"), and the and the Missouri Merchandising Practices Act, Mo. Rev. Stat. §

407.010, *et seq.* ("MMPA"), and states for his Complaint:

**JURISDICTION AND VENUE**

       1.      This Court has original jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28

U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367.

       2.      Venue is proper in this District because: a) part of the acts and transactions

occurred here; and b) Defendant transacts business in this District.

**PARTIES**

       3.      Plaintiff, Jeffrey Hanford, is a natural person residing within Missouri from whom

Defendant attempted to collect an alleged debt.  He is a "consumer" or a "person" affected by a

violation of the FDCPA, as those terms are defined by 15 U.S.C. §§ 1692a(3), 1692d, and 1692k as well as by MMPA.

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a home internet services bill.

5.     Defendant Franklin Collection Service, Inc. is a foreign corporation with its primary offices located at 2978 W. Jackson St., Tupelo, MS 38801.

6.     Defendant is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.     Defendant is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Defendant is a debt collector as defined in 15 U.S.C. §1692a.

## FACTUAL ALLEGATIONS

8.      On or about July 27, 2016, Defendant mailed a collection letter to Plaintiff regarding an alleged debt owed to "AT&T." A copy of the letter is attached to this complaint as Exhibit A.

9.      Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

10.     Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

11.     The debt referenced in Exhibit A was incurred for home telecommunications services in Plaintiff's residence. Thus, the debt was incurred for personal, family or household purposes.

12.     Upon information and belief, Exhibit A is the first debt collection letter that

Defendant sent to Plaintiff regarding the alleged debt identified therein.

13.     Exhibit A contains the debt validation notice that the FDCPA, 15 U.S.C. §

1692g, requires to be included with the initial written communication to the consumer:

UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS
NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION
THEREOF, THIS OFFICE WILL ASSUME THE DEB IS VALID.  IF YOU  NOTICE THIS
OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE
THAT THE DEBT, OR ANY PART THEREOF, IS DISPUTED THIS OFFICE WILL
OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT
OR VERIFICATION.  IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY
(30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU
WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT
FROM THE CURRENT CREDITOR.

(capitalization in original).

14.     Exhibit A states that the "outstanding balance" of the debt is $129.06.

15.     Exhibit A also contains the following text:

I INTEND TO REPORT THIS ACCOUNT TO YOUR CREDIT HISTORY AFTER 30 DAYS
OF YOU RECEIVING THIS NOTICE.

(capitalization in original).

16.     Reading Exhibit A as a whole, Plaintiff has thirty days after receiving Exhibit A

to pay in full or risk the account being reported to consumer reporting agencies ("CRAs").

Exhibit A.

17.     If Exhibit A was actually mailed on July 27, 2016, the thirty day validation period

identified in Exhibit A would likely not have ended before Plaintiff's account could potentially

be reported to CRAs. See 15 U.S.C. §1692g(a).

18.     Exhibit A is confusing to the unsophisticated consumer because it both demands

a payment within the validation period or shortly thereafter and specifies a consequence (credit

reporting) for not doing so, but does not explain how the validation notice and payment deadline

fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

19.     The unsophisticated consumer would have no idea how to seek verification of the debt, preserve the settlement offer, and avoid the debt being reported to CRAs in Exhibit A.

20.     Nothing in Exhibit A states whether a dispute would stop or otherwise affect the process of reporting the Plaintiff's account to CRAs.

21.     Further, even if the consumer disputed the debt in writing, it is likely that the thirty-day period would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether the debt is legitimate and actually theirs before paying Defendant.

22.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay, or take other action. This is the point of the thirty-day period created by Congress in 15 U.S.C. 1692g(a).

23.     Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. He may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

24.     Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two

options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

25.     The § 1692g validation period lasts for thirty days. It is the consumer's right to *request* verification until the end of the thirty-day period. If the request is not made until the end of the thirty-day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

26.     Together, the effect of the settlement "carrot" and the credit reporting "stick" in the initial validation letter is to discourage or prevent consumers from exercising their validation rights.

27.     Various Circuits have endorsed "safe harbor" language regarding apparent conflicts between validation rights and demands for payment in collection letters. *See, e.g., Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

28.     Defendant did not use the safe harbor language in <u>Exhibit A</u>, or any equivalent or similar language.

29.     In addition, <u>Exhibit A</u> threatens litigation against Plaintiff.

30.     <u>Exhibit A</u> includes the following language:

If you are not paying this account, call (888) 315-0912 for other available options, or contact your attorney regarding our potential remedies, and your defenses.

31.     The unsophisticated consumer would interpret Defendant's directive to "contact your attorney regarding our potential remedies, and your defenses" as a threat of imminent legal action.

32.     Debt collection letters that falsely "communicate that a lawsuit is not merely a

possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989).

33.     Even indirect or oblique threats of legal action give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136; *Bloodworth v. United Credit Serv.*, No. 15-cv-0502, 2016 U.S. Dist. LEXIS 49129 *4-6 (E.D. Wis. Apr. 12, 2016) ("This five-day deadline combined with the statement that delay would not be tolerated could give the unsophisticated consumer a sense that further action was imminent.").

34.     Defendant is an out-of-state debt collector and is not a law firm.

35.     Defendant has no ability to sue Plaintiff to collect an alleged debt owed to AT&T. AT&T would be the real party in interest in any lawsuit.

36.     Moreover, Defendant has no insight into or control over AT&T's litigation strategies.

37.     Upon information and belief, Defendant had no knowledge whether AT&T intended to sue Plaintiff or any class member to collect the alleged debts.

38.     A search of Missouri's CaseNet e-filing system reveals that, as of July 17, 2017, AT&T had not sued Plaintiff to collect the alleged debt identified in <u>Exhibit A</u>.

39.     The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

40.     15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

41.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42.      15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

43.      Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

44.      The false, confusing and misleading statements in Exhibit A are material false statements. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

45.      A collection account is a negative item that lowers a consumer's credit score and generally remains on the consumer's "credit report" for seven years.

46.      Consumers are concerned about their credit scores and are likely to take action to avoid negative reporting.

47.      The consumer is likely to be deceived into paying or settling, whether the debt is legitimate or not, to preserve his credit score.

48.      Plaintiff was confused by Exhibit A.

49.      The unsophisticated consumer would be confused by Exhibit A.

50.       Plaintiff had to spend time and money investigating Exhibit A.

51.       Defendant's conduct has caused Plaintiff to suffer damages including but not limited to the loss of time incurred by Plaintiff as well as attorneys' fees paid for advice regarding Plaintiff's situation.

52.      Plaintiff had to take time to obtain and meet with counsel, including traveling

to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

53.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

54.     All of Defendant's collection actions at issue occurred within one year of the date of this Complaint.

55.     Plaintiff never agreed to arbitrate any disputes with Defendant, never agreed to waive Plaintiff's constitutional right to a trial by jury, and never agreed to waive Plaintiff's right to be a class representative in such a case against Defendant.

56.     Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).

57.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58.     Here, Plaintiff suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendant's conduct.

59.     Plaintiff's injury-in-fact is fairly traceable to the challenged conduct of Defendant.

60.     Plaintiff's injury-in-fact is likely to be redressed by a favorable decision against Defendant in this Court.

61.     Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard.  *See, e.g., Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000) (citing *Gammon v. GC Services, Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir. 1994)).

## COUNT I – FDCPA

62.     Plaintiff adopts and realleges all previous paragraphs herein.

63.     Together, the settlement offer and threat of credit reporting in Exhibit A

conflict with and overshadow the debt validation notice.

64.    Exhibit A demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and credit reporting "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

65.    Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

66.    Defendant's misrepresentation is material, as it could provoke the consumer into paying on false pretenses or foregoing validation – either to take advantage of a purported discount, or to improve or limit damage to her credit score, or both.

62.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a) and 1692g(b).

## COUNT II – FDCPA

63.    Plaintiff adopts and realleges all previous paragraphs herein.

64.    Exhibit A threatens litigation against the recipient.

65.    The unsophisticated consumer would interpret language like "contact your attorney regarding our potential remedies, and your defenses" as a threat of imminent legal action.

66.    Defendant, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to AT&T.

67.    AT&T has not sued Plaintiff almost 11 months after the date on Exhibit A.

68.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

## COUNT III – MMPA

69.    Plaintiff adopts and realleges all previous paragraphs herein.

70.     The Missouri Supreme Court has declared that conduct, as Defendant's conduct here, performed in the loan collection context occurs "in connection with" with the sale of merchandise—specifically, the original loan transaction—such that the MMPA applies to the is case.  *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 413 (Mo. banc 2014).

71.     Defendant used deception, false pretenses, false promises, misrepresentation, factual omissions, and unfair business practices when they deceived Plaintiff about their attempts to collect the alleged debt without effectively disclosing the name of the creditor to whom the alleged debt was owed.

72.     Specifically, Defendant's letters falsely represented that AT&T would sue Plaintiff and class members.

73.     In fact, AT&T had not determined whether it would sue Plaintiff or any class member when Exhibit A was mailed to the class.

74.     Moreover, Defendant had no authority or intent to sue Plaintiff or class member. AT&T would be the real party in interest.

75.     Defendant's above-described communications outside of court attempting to collect the underlying debt were respectively made "in connection with" the original alleged debt at issue for purposes of the MMPA because (a) those actions sought to enforce the original loan's terms and (b) "the sale of a loan lasts as long as the agreed upon services are being (or could be) performed."  *Conway*, 438 S.W.3d at 415.

76.     Plaintiff would never obtain any credit account, much less the alleged debt at issue, if he had known Defendant would conduct themselves as described herein regarding such account.

77.     Defendant's above-described conduct caused Plaintiff an ascertainable loss of

including but not limited to the loss of money and time by Plaintiff as well as attorneys' fees paid for advice regarding his situation.

78.     Defendant's actions were outrageous, wanton, willful, and in deliberate disregard of Plaintiff's rights and merit punishment, meriting an award of actual and punitive damages pursuant to Mo. Rev. Stat. 407.025(1).

79.     Defendant's violation of MMPA renders it liable for actual damages, costs, and reasonable attorneys' fees pursuant to Mo. Rev. Stat. 407.025(1).

## **CLASS ALLEGATIONS**

69.     Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Missouri (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between July 27, 2016 and July 17, 2017, inclusive, (e) that was not returned by the postal service.

70.     The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

71.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions include:

>      a.     Whether Defendant whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692g.

>      b.     Whether Defendant violated the MMPA by inadequately identifying the creditor to whom the alleged debt was owed within Defendant's initial communication attempting to collect that debt.

72.     Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

73.     Plaintiff will fairly and adequately represent the interests of the Class members.

74.     Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

75.     A class action is superior to other alternative methods of adjudicating this dispute.

76.     Individual cases are not economically feasible.

**↓ WHEREFORE**, Plaintiff Jeffrey Hanford, individually and on behalf of all others similarly situated prays that this Court:  respectfully requests a judgment be entered by this Court in favor of Plaintiff, and against Defendant, finding that Defendant violated the FDCPA and awarding Plaintiff relief, including:

a.  Certify this action as a class action;

b.  Appoint Plaintiff Hanford as Class Representative;

c.  Find that Defendant's form collection letter violates the FDCPA;

d.  Enter judgment in favor of Plaintiff Hanford and the Class, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1692k(a); and

e.  Grant such other or further relief in Plaintiff's favor as deemed just and proper.

## <u>JURY DEMAND</u>

Plaintiff, Jeffrey Hanford, individually and on behalf of all others similarly situated, demands a trial by jury on all Counts so triable.

DATED:  July 18, 2017                     Respectfully Submitted,

                                          **STURYCZ LAW GROUP**

                            By:    /s/ Nathan D. Sturycz
                                   Nathan D. Sturycz, #61744MO
                                   100 N. Main, Suite 11
                                   Edwardsville, IL  62025
                                   Phone: 877-314-3223
                                   Fax: 314-667-2733
                                   nathan@sturyczlaw.com
                                   *Attorney for Plaintiff*